## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY SPEARS, | ) | |
| | ) | |
| Petitioner, | ) | 18 C 373 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| FRANK LAWRENCE, Acting Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Johnny Spears has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Frank Lawrence,[1] Acting Warden of Menard Correctional Center ("Respondent"), contends that Spears's claims are procedurally defaulted, meritless, or noncognizable. For the following reasons, the petition [1] is denied.

## Factual Background[2]

Spears was charged and convicted of the murder of Octavious Dandridge, which occurred at the intersection of Chicago and St. Louis Avenues in Chicago,

---

[1] Rule 2(a) of the Rules Governing Section 2254 *habeas* cases provides that the proper respondent is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Frank Lawrence is currently the Acting Warden of Menard Correctional Center. Accordingly, the Court substitutes him as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Accordingly, the Court adopts the factual account as provided in Resp't Ex. A, *People v. Spears*, No. 1-10-1914, 2012 IL App (1st) 101914-U (Ill. App. Ct. Aug. 2, 2012), ECF No. 13-1.

Illinois, on April 22, 2008. Resp't Ex. A at 2. On that day, Spears, Charles Munyi, Owen Turner, and Rodney Turner[3] walked Spears's stepbrother Jerrell Dillard to a nearby bus stop. *Id.* at 2, 9. As they walked back, they encountered Dandridge and his friend Deon Richard. *Id.* at 2. Spears and Dandridge got into a verbal altercation, and Dandridge was shot. *Id.*

At trial, the State's case rested on four witnesses who identified Spears as the shooter—Munyi, Richard, Owen, and DeAngelo Jones. *Id.* at 3–9. Munyi, however, was the only witness who gave a positive identification at trial; Richard, Owen, and Jones all recanted their prior statements accusing Spears of the murder. *Id.* Accordingly, the State called as witnesses several police officers and prosecutors to prove up the prior inconsistent statements identifying Spears. *Id.* The defense, by contrast, theorized that Munyi was the shooter, and attempted to prove that fact through cross-examination of the State's witnesses. *Id.* at 2. The defense also called Dillard to support its theory. *Id.* at 9–10.

## I.     Richard's Testimony and Prior Inconsistent Statements

Richard testified that he met with police and an Assistant State's Attorney ("ASA") on April 24, 2008. *Id.* at 3. At that time, Richard made a statement, which the ASA recorded and Richard signed. *Id.* According to that statement, Richard and Dandridge were standing near the intersection of Chicago and St. Louis Avenues when Richard saw two men pass by. *Id.* One, whom Richard referred to as "Shorty,"

---

[3]     The Illinois Appellate Court's decision does not clarify whether Rodney is a first or last name. Other documents in the record, however, clarify that "Rodney" is Rodney Turner. *See* Resp't Ex. C, State's Direct Appeal Br. at 1, ECF No. 13-3. The Court refers to Rodney and Owen Turner by their first names for clarity.

asked Dandridge "what did he say," and when Dandridge responded that he was not looking for trouble, an argument ensued. *Id.* Shorty then grabbed a black gun from his waistband and shot at Dandridge. *Id.* Dandridge ran, but Shorty pursued him and shot seven or eight more times, hitting Dandridge in the back and neck. *Id.* At the time he gave the statement, Richard identified Spears as the shooter from a photo array, and identified Dillard as Spears's companion. *Id.* at 3–4. Richard was familiar with Spears and knew that Spears lived in the area. *Id.* at 4.

At trial, Richard acknowledged that he had made these statements and identifications, but recanted them. *Id.* at 4. He testified that, although he was at the scene, he heard only gunshots and did not see the shooter. *Id.* He stated that police had forced his statement, and that he had made the statement based on neighborhood gossip. *Id.* He also stated that he was angry about his friend's murder and wanted to see someone convicted. *Id.*

The State presented three witnesses to prove up Richard's prior inconsistent statements—Chicago police sergeant Daniel Gallagher, ASA Joy Tolbert Nelson, and ASA Patrick Keane. *Id.* at 4–5. Gallagher and Nelson were present for Richard's police-station interview, and verified that he had made the statement. *Id.* Keane testified that Richard had given the same story to the grand jury. *Id.* at 5. All three witnesses testified that Richard's prior statements had not been coerced. *Id.* Richard's statement to police and grand-jury testimony were then admitted as substantive evidence pursuant to 725 Ill. Comp. Stat. 5/115-10.1. *Id.* at 11.

## II.    Owen Turner's Testimony and Prior Inconsistent Statements

Owen testified that he had spoken to the police several days after the shooting and had given a signed statement on June 20, 2008. *Id.* at 5. In that statement, he identified himself, Rodney, Munyi, and Spears from a photo taken by a pod camera and stated that they were coming back from dropping off Dillard at the bus stop. *Id.* Owen also stated that Spears had exchanged words with Dandridge, whom Owen similarly identified in a photo. *Id.*

Owen acknowledged at trial that he had given this statement, but recanted and offered a different story suggesting that Munyi had been responsible for the shooting. *Id.* He testified that, when he and the others walked Dillard to the bus stop, he saw Dillard take something from his waistband and hand it to Munyi. *Id.* Owen, Rodney, Munyi, and Spears then walked near the intersection of Chicago and St. Louis Avenues, but Munyi and Spears lagged a few feet behind. *Id.* at 6. According to Owen, Rodney then said that "Ghost"—referring to Munyi—was arguing with someone. *Id.* The group continued to walk, when Owen heard gunshots. *Id.* On cross-examination, Owen said that he saw Munyi with the gun, which was black with a pearl handle. *Id.* Later, Owen saw Munyi and Jones in the alley with a shovel, burying the gun. *Id.*

The State presented two witnesses to prove up Owen's prior inconsistent statements—Chicago police detective Donald Hill and ASA Jose Villareal. *Id.* Hill had interviewed Turner at the police station on June 20, and Villareal took Turner's statement in the presence of Hill the next day. *Id.* Both testified to Owen's prior

statement and said Owen had made no mention of seeing Dillard pass something to Munyi, of Munyi and Dandridge arguing, or of seeing Munyi with the gun after the shooting. *Id.* Owen's prior statements were admitted as substantive evidence pursuant to 725 Ill. Comp. Stat. 5/115-10.1. *Id.* at 11.

## III. Jones's Testimony and Prior Inconsistent Statements

Jones testified at trial that he previously had given testimony to the grand jury. *Id.* at 6. Before the grand jury, Jones had testified that Spears had telephoned him shortly after the murder, asking him to retrieve a gun. *Id.* Jones agreed, and he, Munyi, and Owen retrieved the gun and buried it. *Id.* at 7. A few days later, Jones asked Spears, "[w]hat would make you do something stupid like [that]?" and Spears responded, "[i]f the shoe was on the other feet he would have did me in." *Id.*

But Jones recanted his grand jury testimony at trial, revising certain details and adding new ones. *Id.* at 6–7. He testified that after Spears had called him, Munyi also called him and asked him to help "get rid" of a gun. *Id.* at 7. Furthermore, he testified that his conversation with Spears actually referred to Munyi. *Id.*

The State called two witnesses to prove up Jones's prior statement—Detective Hill and ASA Keane, both of whom had interviewed Jones before his grand-jury appearance. *Id.* Jones's prior statement was admitted as substantive evidence pursuant to 725 Ill. Comp. Stat. 5/115-10.1. *Id.* at 11.

## IV. Munyi's Testimony and Cross-Examination

Most important to the State's case was Munyi, who testified at trial that he saw Spears shoot Dandridge. *Id.* at 8. According to Munyi, he had been at Spears's

house with Rodney, Owen, and Spears, and the group decided to walk three blocks with Dillard to the bus stop because Dillard did not feel safe going alone. *Id.* After Dillard boarded the bus, the group walked back. *Id.* Rodney and Owen cut across a vacant lot, but Munyi and Spears remained on the sidewalk, where they ran into Dandridge and his friends. *Id.* Munyi said that Dandridge began threatening Spears, labeling him a "snitch." *Id.* Spears then pulled out a "long-nosed black revolver with a white handle" from his waist, and shot Dandridge in the head. *Id.* Dandridge tried to run, but Spears shot him several more times. *Id.*

Munyi stated that, days later, he saw the same gun being passed around at the residence of Rodney and Jones. *Id.* He testified that the last time he saw the gun was in that house and that he did not know what happened to it afterwards. *Id.* He denied having anything to do with getting rid of the gun. *Id.*

Before Munyi's cross-examination, the trial court held a meeting in chambers, and defense counsel sought permission to inquire into an armed robbery with which Munyi had been charged. *Id.* at 8–9. Counsel claimed that, in the robbery, Munyi and Jones had used the same gun that was used in Dandridge's shooting. *Id.* at 9. Counsel argued that this line of inquiry was relevant to impeach Munyi's testimony that he saw the gun only once a few days after the shooting, and to corroborate testimony that Munyi had helped to bury the gun. *Id.* The court asked whether counsel could specifically "link" the gun used in the murder to the gun used in the robbery, to which counsel responded that Jones had told him the guns were the same. *Id.* The court denied permission to conduct cross-examination to that effect,

concluding that if counsel could not "prove it up with certainty," the court would not "get into this other case." *Id.*

## V. Dillard's Testimony

Dillard testified on Spears's behalf and stated that he had asked Spears to walk with him to the bus stop for his safety. *Id.* Dillard did not want to travel alone because there had been a confrontation with Dandridge earlier, and Dandridge was "patrolling" the area. *Id.* Dillard asked Munyi for a gun, and Munyi handed him a black revolver with a long barrel and white handle. *Id.* The group, which included Munyi, Spears, Rodney, and Owen, then proceeded to the bus stop, where Dillard handed the gun back to Munyi. *Id.*

On cross-examination, Dillard admitted to lying to police about Spears's whereabouts after the shooting. *Id.* at 9–10. Furthermore, the State called Detective Hill, who rebutted Dillard's testimony by stating that Dillard had not told police that he had borrowed a gun from Munyi. *Id.* at 10. Finally, the State called Munyi as a rebuttal witness; Munyi denied giving Dillard the gun or taking it from him, and said he had not possessed a gun that evening. *Id.*

The jury found Spears guilty of first-degree murder and determined that he had personally discharged the gun that caused Dandridge's death. *Id.* Spears filed a motion for a new trial, arguing again that he should have been allowed to cross-examine Jones and Munyi regarding their alleged use of the murder weapon in a later armed robbery. *Id.* The trial court denied Spears's motion and sentenced him to 45 years of imprisonment. *Id.*

## Direct Appeal

On appeal, Spears, who was represented by counsel, contended that the prior inconsistent statements of Richard, Owen, and Jones were inadmissible, prejudicial, and unduly cumulative. *Id.* at 10–11. He also argued that the trial court denied him the right to confront his accusers by not allowing him to cross-examine Munyi and Jones about their subsequent use of the murder weapon. *Id.* at 14. Finally, he argued that the trial court violated Illinois Supreme Court Rule 431(b), which requires the trial court to ask certain questions of the jury before trial. *Id.* at 18.

The Illinois Appellate Court affirmed Spears's conviction and sentence. First, the court found that Spears's failure to object to the admission of the prior inconsistent statements at trial had resulted in forfeiture. *Id.* at 10. Reviewing for plain error, the court found none. *Id.* Second, the court held that, because trial counsel had not made an adequate offer of proof regarding Munyi's later use of the gun, Spears's Confrontation Clause claim was waived. *Id.* at 15–17. And, even if the claim had not been waived, the court "question[ed]" the relevance of Spears's proposed cross-examination, concluding that Spears had adequately informed the jury of his theory of defense. *Id.* at 17–18. Finally, the court determined that Spears had forfeited his claim under Rule 431(b) and had not established plain error. *Id.* at 18–20.

Spears moved for rehearing based on the same issues, but the Illinois Appellate Court denied his petition. Resp't Ex. E, Pet'r Direct Appeal PLA App'x, Order Denying Rehearing, ECF No. 13-5.

Spears filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, raising the issues of the prior inconsistent statements and his proposed cross-examination. *See* Resp't Ex. E, Pet'r Direct Appeal PLA at 4, ECF No. 13-5. The Illinois Supreme Court denied the PLA on March 27, 2013. Resp't Ex. E, *People v. Spears*, No. 115373 (Ill. Mar. 27, 2013), ECF No. 13-5.

### **Postconviction Proceedings**

Spears filed a *pro se* postconviction petition in February 2014, raising two claims. *See* Resp't Ex. G, Postconviction *Finley* Mot. at 10–11, ECF No. 13-7. First, he claimed that trial counsel was ineffective for failing to challenge the indictment against him on the grounds that it was based on perjured testimony—namely, Richard's and Jones's grand-jury testimony. *Id.* at 10. Second, he argued that appellate counsel was ineffective for attacking only the inconsistency of three of the State's prior witness statements, and failing to assert that the statements amounted to perjury. *Id.* at 11.

The trial court summarily dismissed Spears's postconviction petition and motion to reconsider. *See id.* at 11–12. Spears filed a notice of appeal, and counsel was appointed. *See id.* at 12. Postconviction appellate counsel, however, filed a motion pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that the appeal presented no arguable issues of merit. *See id.* at 13. Spears responded, arguing that the issues in his petition stated colorable claims for postconviction relief. *See generally* Resp't Ex. H, Pet'r Resp. *Finley* Mot., ECF No. 13-8.

The Illinois Appellate Court granted counsel's motion and affirmed the denial of the petition. Resp't Ex. I, *People v. Spears*, No. 1-15-1772 (Ill. App. Ct. Feb. 15, 2017), ECF No. 13-9. Spears filed a PLA, which the Illinois Supreme Court denied. Resp't Ex. J, Pet'r Postconviction PLA and Order Denying PLA, ECF No. 13-10.

## Federal *Habeas* Claims

In his federal *habeas* petition, Spears essentially reargues the claims presented on direct appeal. First, he contends that his rights under the Confrontation Clause were violated by the trial court's refusal to allow him to cross-examine Munyi and Jones about Munyi's later possession of the gun used to kill Dandridge (Ground One). Second, Spears contends that the trial court violated Illinois Supreme Court Rule 431(b), resulting in an unfair trial (Ground Two). Third, Spears argues that he was denied a fair trial by the use of prior inconsistent statements because they were either inadmissible or unduly cumulative (Ground Three).

## Legal Standard

A writ of *habeas corpus* will be granted only if the petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state-court decision is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

"A federal *habeas* court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The Court is limited to reviewing the record before the state court, as well as the Supreme Court precedent in existence, at the time of the state-court decision. *Id.*; *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

"AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 352 (2013)). "As a condition

for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (internal quotation marks omitted). Put another way, *habeas corpus* is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks omitted). "Under § 2254(d), a *habeas* court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

## Analysis

### I.   Ground One

Respondent argues that Ground One—which concerns Spears's right to cross-examine Munyi about his alleged possession of the murder weapon—is procedurally defaulted. Spears disagrees and points out that he raised this issue throughout the proceedings in his direct appeal.

A claim is procedurally defaulted if the petitioner failed to fairly present it at each level of state-court review, including in a petition for leave to appeal before the

state supreme court. *Guest v. McCann*, 474 F.3d 926, 929–30 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Additionally, a state prisoner's *habeas* claim may not be entertained by a federal court when "(1) a state court [has] declined to address a prisoner's federal claims because the prisoner ha[s] failed to a meet a state procedural requirement," and "(2) the state judgment rests on independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S 307, 316 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)) (internal quotation marks omitted). A state procedural rule is "adequate" if it is "firmly established and regularly followed." *Id.* (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). And a state procedural rule is "independent" if the state court "actually relied on the state procedural rule as an independent basis for the disposition of the case." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

If a claim is procedurally defaulted, a petitioner is not entitled to *habeas* relief unless cause exists for the default and actual prejudice was suffered, or a fundamental miscarriage of justice resulted in the conviction despite the petitioner's actual innocence. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

The Illinois Appellate Court, in denying Ground One, concluded that it was waived based on trial counsel's failure to set forth an adequate offer of proof. The rules concerning offers of proof are firmly established in Illinois. For instance, in *People v. Tabb*, the Illinois Appellate Court explained:

When a line of questioning is objected to or denied by the trial court, the defendant must set forth an offer of proof either to convince the trial court to allow the testimony or to establish on the record that the evidence was directly and positively related to the issue of bias or motive to testify falsely. A formal offer of proof is typically required; however, an informal offer of proof, involving counsel's summary of what the proposed evidence might prove, may be sufficient if specific and not based on speculation or conjecture.

870 N.E.2d 914, 923–24 (Ill. App. Ct. 2007) (citing *People v. Phillips*, 542 N.E.2d 814, 821 (Ill. App. Ct. 1989)). Failure to set forth an adequate offer of proof results in waiver of the issue. *People v. Andrews*, 588 N.E.2d 1126, 1131 (Ill. 1992).

Citing these rules, the Illinois Appellate Court agreed with the trial court (1) that Spears's counsel had not made a formal offer of proof, and (2) that counsel's informal offer of proof—consisting only of his conversations with Jones and Munyi about what their testimony might reveal—was speculative. *See* Resp't Ex. A at 16–17. Based upon this, the court held that Spears had "waived his claim for review." *Id.* at 17.

Federal courts have found the offer-of-proof rule to be an adequate basis on which to deny *habeas* relief. *See United States ex rel. Veal v. DeRobertis*, 693 F.2d 642, 647–50 (7th Cir. 1982) (concluding that the petitioner had procedurally defaulted by failing to make an offer of proof under Illinois law, but remanding for a determination of cause and prejudice); *United States ex rel. Starks v. O'Sullivan*, No. 97 C 3246, 2002 WL 485368, at *7 (N.D. Ill. Mar. 29, 2002) (finding procedural default based on the petitioner's failure to make an offer of proof). What is more, the Illinois Appellate Court's holding that Spears had waived his Confrontation Clause claim provided an independent basis for its judgment. Although the court went on to

discuss the relevance of Spears's proposed cross-examination, this was a mere side note, or, at most, a second independent basis for the judgment. Accordingly, the Court concludes that the Illinois Appellate Court addressed Ground One on an adequate and independent state procedural ground.

Spears, in reply, makes two arguments against the application of procedural default. First, he notes that he had raised the cross-examination issue throughout his direct appeal. Second, Spears argues that, on direct appeal, the State did not argue procedural default, and thus waived it. But Spears misunderstands the nature of the procedural default at issue—the Court does not conclude that the claim is procedurally defaulted due to Spears's failure to raise it in the state courts. Moreover, it is of no moment that the Illinois Appellate Court decided the claim on procedural grounds despite the State's failure to raise an argument to that effect. Rather, the question for the Court is whether the Illinois Appellate Court decided the claim on an adequate and independent state ground, no matter how it came to do so. Because the court here did apply a state procedural ground, *i.e.,* Spear's failure to provide an adequate offer of proof, the claim is procedurally defaulted. *See Walker*, 562 U.S at 316.[4]

Spears has not argued that there is any cause for the procedural default or prejudice arising from it. He does, however, make a great deal of argument

---

[4]     Spears also could be said to argue in reply that the denial of his proposed cross-examination violated his right to present his theory of defense to the jury, in addition to his rights under the Confrontation Clause. But the state court's holding—that the cross-examination was properly denied due to an inadequate offer of proof—would govern this issue as well. Accordingly, to the extent Spears seeks relief on this ground, it is denied.

concerning his innocence. "Actual innocence" is a "narrow exception" to the general rule requiring a showing of cause and prejudice to excuse a procedural default. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). But a court reviewing such a claim must "proceed with caution." *Id.* at 398 n.2. To meet the standard, a petitioner must demonstrate, "based on new, reliable evidence, that 'in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.'" *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). In considering this standard, courts must "consider all the evidence, both old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted at trial." *Id.* at 1101.

Spears's petition does not rise to the level of showing actual innocence. Although he presents a cogent alternative theory about Munyi being the real shooter, he does not present any new evidence supporting that theory. Nor would his proposed cross-examination suffice to prove his innocence. At best, it would establish that Munyi had more involvement with the gun after the murder than what the jury had previously heard. Still, as to the murder itself, the jury would be entitled to credit the statements that Richard, Owen, and Jones made to the police and the grand jury, as well as Munyi's testimony. When multiple witnesses identify the same person, actual innocence is a high bar to clear. *See id.* at 1101 (collecting cases).

For these reasons, the Court denies *habeas* relief as to Ground One.

## II.    Ground Two

Respondent claims that Ground Two, which asserts that the trial court violated Illinois Supreme Court Rule 431(b), is not cognizable on *habeas* review.[5]

Rule 431(b), which codifies the Illinois Supreme Court's holding in *People v. Zehr*, 469 N.E.2d 1062 (Ill. 1984), requires the trial court to ask jurors whether they understand and accept four principles of law:

> (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her.

Ill. Sup. Ct. R. 431(b).  Spears contends that, although the trial court explained the principles and asked the jurors if they *accepted* them, the court did not ask if the jurors *understood* them.

Respondent is correct that "errors of state law in and of themselves are not cognizable on *habeas* review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Still, this is not a categorical rule.  Rather, "if a state court's errors have deprived the petitioner of a right under federal law," the federal courts can intervene.  *Id.* Specifically, "a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial." *Id.*  Spears raises exactly such a claim, contending that

---

[5]    Respondent contends that both Grounds Two and Three are noncognizable.  The Court notes that, as to both grounds, the Illinois Appellate Court found the issues forfeited and reviewed them for plain error.  Ordinarily, such a holding would support a finding of procedural default.  *See Kaczmarek*, 627 F.3d at 592.  But procedural default is waivable, *Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004), and the State has not argued it here. Accordingly, the Court does not treat Grounds Two or Three as procedurally defaulted.

the trial court's failure to comply with Rule 431(b) violated his right to due process and a fair trial.

The problem with Spears's claim, however, is that there is no clearly established federal law requiring the trial court to ask the specific questions elucidated in *Zehr*. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Spears cites state law, but even those cases make clear that not every violation of Rule 431(b) would result in a denial of due process. Rather, as the Illinois Supreme Court has clarified, "[d]efendants do not have a right to Rule 431(b)(4) questioning under either the United States or the Illinois Constitution. . . . While the rule is designed to help ensure that defendants are tried before a fair jury, we cannot say that Rule 431(b)(4) questioning is indispensable to a fair trial." *People v. Glasper*, 917 N.E.2d 401, 415–16 (Ill. 2009); *see also People v. Sebby*, 89 N.E.3d 675, 694 (Ill. 2017) ("The key point of Glasper . . . is unremarkable: A Rule 431(b) violation does not necessarily result in a biased jury."). Accordingly, Ground Two does not set forth any violation of clearly established federal law, and it is denied. *See also United States ex rel. Montgomery v. Butler*, 91 F. Supp. 3d 1021, 1023–24 (N.D. Ill. 2015) (rejecting a Rule 431(b) claim as noncognizable on *habeas* review).

## III.  **Ground Three**

Respondent also argues that Ground Three—which concerns the admission of prior inconsistent statements by the recanting witnesses as well as the additional testimony proving up those statements—cannot be the subject of *habeas* review.

Ground Three, like Ground Two, presents an issue of state law that would ordinarily not be reviewable in a *habeas* court: the admissibility of testimony and prior recorded statements. *See Estelle*, 502 U.S. at 68. But, like Ground Two, Spears argues that the admission of the statements violated his due-process right to a fair trial. *See Perruquet*, 390 F.3d at 511.

The Supreme Court addressed the due-process considerations underlying admission of a witness's prior inconsistent statements as substantive evidence in *California v. Green*, 399 U.S. 149 (1970). In a footnote, the Court noted that "considerations of Due Process . . . might prevent convictions where a reliable evidentiary basis is totally lacking." *Id.* at 163 n.15. Since then, the Seventh Circuit has adopted a set of factors intended to safeguard against the possibility that introduction of prior inconsistent statements will result in a baseless verdict. *See Vogel v. Percy*, 691 F.2d 843, 846–47 (7th Cir. 1982). Under *Vogel*, a prior inconsistent statement causes no constitutional problem, even when admitted as substantive evidence, where: "(1) the declarant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admitted making the statement; and (5) there was some corroboration of the statement's reliability." *Id.*

The admission of prior recorded statements pursuant to 725 Ill. Comp. Stat. 5/115-10.1 is sufficient to protect a defendant's due-process rights. *See Johnson v. Washington*, 119 F.3d 513, 519–22 (7th Cir. 1997) (citing approvingly to *People v.*

*Morales*, 666 N.E.2d 839, 844–45 (holding that the requirements of the statute adequately safeguard a defendant's due-process rights as addressed in *Green*)); *see also United States ex rel. Skerrett v. Gaetz*, No. 09 C 2222, 2010 WL 4825627, at *3 (N.D. Ill. Nov. 18, 2010). Accordingly, the testimony that was substantively admitted in this case under that section—Richard's statement to the police and grand-jury testimony, Owen's grand-jury testimony, and Jones's grand-jury testimony—does not raise a due-process concern. Nor does the testimony of the police officers and prosecutors, which was used to prove up the reliability of the prior recorded statements and to impeach Richard, Owen, and Jones.

Spears has not cited to any controlling federal law establishing that the prior inconsistent testimony used in his case could have denied him a fair trial. Accordingly, Ground Three does not state a claim for a violation of Spears's federal rights, and Spears's petition is denied on this ground.

## **Conclusion**

For the reasons provided, Spears's petition for *habeas corpus* is denied. Furthermore, the Court declines to issue a certificate of appealability. Spears has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. *See* 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Civil case terminated.

**IT IS SO ORDERED.**                    **ENTERED: 8/5/19**

_____
**John Z. Lee**
**United States District Judge**